UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID HAYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-11545-DJC |
| ) | |
| CONDUENT COMMERCIAL ) | |
| SOLUTIONS, LLC, LOUISE BUDKA, and ) | |
| PRATAP SARKER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                April 13, 2022

### I. Introduction

Plaintiff David Hayes ("Hayes") has filed this lawsuit against Defendants Conduent Commercial Solutions, LLC ("Conduent"), Louise Budka ("Budka") and Pratap Sarker ("Sarker") (collectively, "Defendants") alleging disability discrimination by Conduent in violation of Mass. Gen. L. c. 151B ("Chapter 151B") and the Americans with Disabilities Act (Count I), age discrimination by Conduent in violation of Chapter 151B and the Age Discrimination in Employment Act (Count II), intentional interference with contractual relations by Budka and Sarker (Count III) and breach of the implied covenant of good faith and fair dealing against Conduent (Count IV). D. 2-1. Defendants now move to dismiss and compel arbitration. D. 11. For the reasons stated below, the Court ALLOWS the motion.

1

**II.     Standard of Review**

When ruling on a motion to compel arbitration, the Court "draw[s] [upon] the relevant facts from the operative complaint and the documents submitted to the [Court] in support of the motion to compel arbitration." Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018). Courts apply a summary judgment standard to such motions. See Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 258 F. Supp. 3d 255, 259 (D.P.R. 2017) (applying summary judgment standard to motion to compel arbitration where parties had "relied extensively upon exhibits filed in the record outside of the complaint"); Pelletier v. Yellow Transp., Inc., 503 F. Supp. 2d 397, 399 (D. Me. 2007) (collecting cases). Accordingly, on a motion to compel arbitration, the Court "consider[s] facts in the light most favorable to the [non-movant] . . . and exercise[s] its wide discretion to look beyond the complaint at pleadings and documents submitted by either party." Boulet v. Bangor Sec. Inc., 324 F. Supp. 2d 120, 123–24 (D. Me. 2004) (quoting Anderson v. Delta Funding Corp., 316 F. Supp. 2d 554, 558 (N.D. Ohio 2004)) (internal quotation marks omitted).

**III.    Factual Background**

The following facts are drawn from Hayes's complaint, D. 2-1, the declaration filed with Conduent's motion, D. 12-1, the affidavit filed with Hayes's opposition, D. 18-1, and accompanying documents.

      **A.     Hayes's Hiring by Conduent**

Hayes worked for BNY Mellon as a programmer from 2002 to May 2019. D. 2-1 ¶¶ 6–7. In May 2019, BNY Mellon sold Hayes's division to Conduent. Id. ¶ 8. Hayes soon after completed an application for employment at Conduent. See D. 12-1 ¶¶ 10–18.

Conduent's electronic application system allows applicants to complete, review and sign documents through an online portal accessed using a private login name and password. Id. ¶¶ 10, 12. To submit his application for employment, Hayes was required to agree to the "Policy

2

Consent" for Conduent's Dispute Resolution Plan and Rules ("DRP"). Id. ¶ 15. The application's "Policy Consent" section states that "[a]pplicants must agree to the terms of the Applicant Agreement and DRP to be considered for employment. Do you agree to the terms of the Applicant Agreement and DRP?" Id. ¶ 13. Hayes was required to agree to the "Policy Consent" for the DRP by clicking his confirmation of the following: "I agree to the terms of this Agreement and to be bound by the [Conduent] Dispute Resolution Plan and Rules." Id. ¶¶ 14–15; see D. 13-1. Conduent's DRP provides that "[a]ll Disputes not otherwise resolved by the Parties shall be finally and conclusively resolved through arbitration under this DRP, instead of through trial before a court (including a jury trial). The Parties forego any right they may have to a bench trial or jury trial on a Dispute." D. 12-2 at 8. The DRP defines "Dispute" to include any:

> matter related to or concerning the relationship between the Applicant and the Company and/or the Employee and the Company alleging violation of any federal, state or other governmental law, statute, regulation, or ordinance, or common law, or contract violation, including but not limited to the Age Discrimination in Employment Act . . . [and] the Americans with Disabilities Act . . . including, by way of example and without limitation, allegations of . . . discrimination or harassment based on . . . age, . . . disability status, or other legally protected characteristics; [and] wrongful discharge . . . .

Id. at 6–7. Hayes submitted his application for employment at Conduent on or about May 3, 2019. D. 12-1 ¶ 15.

After submitting his application, Hayes received a conditional offer of employment from Conduent. Id. ¶ 18; see D. 12-3. Conduent utilizes a system allowing new hires electronically to review and sign documents online, similar to its electronic application system. D. 12-1 ¶ 10. On May 14, 2019, Hayes accepted Conduent's offer of employment and electronically signed various acknowledgements and agreements. See id. ¶¶ 19, 21; D. 12-5. These included an **"AGREEMENT TO BE BOUND BY THE CONDUENT DISPUTE RESOLUTION PLAN AND RULES . . . Otherwise Referred to as the Offeree Arbitration Agreement"** ("Arbitration

3

Agreement"). See D. 12-5 at 6–9 (emphasis in original). The Arbitration Agreement included the following language:

> Having been accepted for employment and as part of my acceptance, I CONSENT TO THE EXCLUSIVE **FINAL AND BINDING RESOLUTION BY ARBITRATION** UNDER THE DRP **OF ALL DISPUTES (as defined in the DRP) INCLUDING LEGAL CLAIMS** . . . arising out of, relating to, or concerning my employment with Conduent, terms and conditions of Conduent employment, and/or separation or termination of Conduent employment . . . .
>
> **The promises by Conduent and me to arbitrate Disputes constitute adequate and sufficient consideration to support this Agreement and the DRP.** . . .
>
> **I UNDERSTAND THAT THIS AGREEMENT AND THE DRP REQUIRE THAT DISPUTES REGARDING THE MATTERS SUBJECT TO THIS AGREEMENT AND THE DRP BE SUBMITTED TO ARBITRATION RATHER THAN TO A JUDGE AND/OR JURY IN COURT AND THAT BY AFFIXING MY ELECTRONIC SIGNATURE TO THIS AGREEMENT . . . I AM GIVING UP ANY RIGHT I MIGHT OTHERWISE POSSESS TO A JURY OR JUDGE TRIAL.** . . .

Id. (emphasis in original). After being presented with the Arbitration Agreement, Hayes provided his electronic signature and acknowledged the following: "I acknowledge that I have received and read or have had the opportunity to read this Agreement and the attached and/or electronically linked DRP." Id. at 9.

Following Hayes's acceptance, his completed online application and new hire documents were transmitted in PDF format to Conduent's online document management system, which maintains such documents as part of Hayes's personnel file. D. 12-1 ¶ 20. Additionally, Hayes received access to Conduent's intranet, which posted a copy of the DRP. Id. ¶ 9.

### B. Termination and Correspondence from Hayes's Counsel

Shortly before beginning his employment with Conduent, Hayes was required to submit to a drug test on or about May 15, 2019. D. 2-1 ¶ 9. Conduent subsequently advised Hayes that he had tested positive. Id. Hayes has long been diagnosed with various medical conditions requiring

4

him to take medications and previously received accommodations for such conditions from BNY Mellon management.  Id. ¶ 14.  On or about May 24, 2019, Conduent representatives, including Budka and Sarker, terminated Hayes.  Id. ¶ 10.

Hayes retained an attorney in June 2019.  D. 18-1 ¶ 2.  In July 2019, Hayes's counsel wrote to Conduent informing it that Hayes had obtained legal representation, describing Hayes's potential legal claims, requesting Hayes's personnel file and seeking an amicable resolution of his claims via settlement.  Id. ¶ 3.  Having received no response, Hayes's counsel resent this correspondence on October 16, 2019.  Id. ¶ 4; see id. at 4.  Hayes did not receive his personnel file following this correspondence.  Id. ¶¶ 5, 18.

### C.     MCAD and Judicial Proceedings

On or about March 19, 2020, Hayes filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") alleging, among other things, disability discrimination and age discrimination in violation of state and federal law.  Id. ¶ 6; see id. at 6–10.  At no point during the MCAD proceeding did Conduent provide Hayes's personnel file or the Arbitration Agreement or otherwise exercise its right to arbitration.  Id. ¶ 7.  Hayes later filed a civil action in Middlesex Superior Court on or about July 28, 2021 and withdrew his MCAD complaint.  Id. ¶¶ 8–9.  On September 20, 2021, Conduent removed Hayes's case to this Court.  D. 18-1 ¶ 12; see D. 2.

On or about October 18, 2021, Conduent's counsel left Hayes's counsel a voicemail message informing her for the first time of an arbitration agreement.  Id. ¶ 14.  Conduent's counsel provided Hayes's counsel with such agreement on or about October 19, 2021 via email.  Id. ¶ 15; see id. at 16.

### IV.    Procedural History

Following its removal of the action to this Court, D. 2, Conduent moved to dismiss and

compel arbitration. D. 11. The Court heard the parties on the pending motion and took the matter under advisement. D. 25.

## V. Discussion

Conduent asks the Court to dismiss this action and issue an order compelling arbitration of Hayes's claims. D. 11. Both federal and Massachusetts law favor arbitration as a matter of public policy. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011); O'Brien v. Hanover Ins. Co., 427 Mass. 194, 200 (1998); see also Warfield v. Beth Israel Deaconess Med. Ctr., Inc., 454 Mass. 390, 394 (2009) (noting that "[i]n all relevant respects, the language of the [Federal Arbitration Act] and the [Massachusetts Arbitration Act] providing for enforcement of arbitration provisions are similar, and [the Massachusetts Supreme Judicial Court has] interpreted the cognate provisions in the same manner"). "The Supreme Court has stated that any doubt concerning arbitrability 'should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Creative Sols. Grp., Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 (1983)).

When considering a motion to compel arbitration, the Court must determine whether there exists a valid and applicable arbitration agreement and, if so, whether the party seeking an arbitral forum has waived its right to arbitration. See Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008).

### A. Whether a Valid Arbitration Agreement Applies

A party moving to compel arbitration must show (1) that a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration agreement, (3) that the arbitration agreement binds the other party and (4) that the asserted claim comes within the arbitration

agreement's scope. Hogan v. SPAR Group Inc., 914 F. 3d 34, 38 (1st Cir. 2019). Each of these elements is satisfied here.

### 1. A Valid Arbitration Agreement Exists

Courts apply "general state-law principles of contract interpretation" to arbitration agreements. PaineWebber Inc. v. Elahi, 87 F.3d 589, 600 (1st Cir. 1996) (quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 475 (1989)). "[A]rbitration is a matter of consent, not coercion." Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017) (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681 (2010)) (further citation omitted). For an online agreement to be enforceable in Massachusetts, "there must be both reasonable notice of the terms and a reasonable manifestation of assent to those terms." Kauders v. Uber Techs., Inc., 486 Mass. 557, 571–72 (2021) (citing Ajemian v. Yahoo!, Inc., 83 Mass. App. Ct. 565, 574 (2013), aff'd, 478 Mass. 169 (2017)). "[T]he burden to show that the terms were reasonably communicated and accepted lies on the party seeking to enforce the [contract provision]." Cullinane, 893 F.3d at 62 (citing Ajemian, 83 Mass. App. Ct. at 611).

#### a) Reasonable Notice

Hayes argues that Conduent has failed to show that the Arbitration Agreement was reasonably communicated to him. D. 18 at 11. First, Hayes contends that, despite Conduent's claim that it has made the DRP available on its intranet site for all employees to view, such does not explain how the DRP is presented on the intranet site nor whether it was posted during Hayes's application process. Id. at 12–13. Second, Hayes asserts that Conduent has provided no information about how the online application system notifies applicants about company policies; that the application's language would not have provided reasonable notice that the applicant was entering into a "significant contractual relationship"; and that, based upon Conduent's description

7

of the system, that an applicant likely would have needed to follow a link to view the DRP but may not have been required to do so before indicating his agreement to it. Id. at 13–14. Finally, Hayes argues that the Arbitration Agreement, delivered as a subset of numerous pages in his offer acceptance paperwork, was "not unusual or special and therefore did not signal to Plaintiff that anything out of the ordinary was occurring." Id. at 14.

"In determining whether the notice is reasonable, the court should . . . consider the nature, including the size, of the transaction, whether the notice conveys the full scope of the terms and conditions, and the interface by which the terms are being communicated." Kauders, 486 Mass. at 573. Given the "traditional rule" in Massachusetts "that one is assumed to have read and understood the terms of a contract he signs," an employee need not "actually kn[o]w" about an arbitration agreement's provisions so long as adequate notice is provided. See Gonzalez v. GE Grp. Adm'rs, Inc., 321 F. Supp. 2d 165, 169 (D. Mass. 2004) (citing Tiffany v. Sturbridge Camping Club, Inc., 32 Mass. App. Ct. 173, 175 n.5 (1992)).

Even assuming *arguendo* the employment application and intranet did not provide Hayes with sufficient notice of the Arbitration Agreement's terms, the agreement itself—included in Hayes's offer acceptance paperwork—did. See D. 12-1 ¶ 21; D. 12-5. The Arbitration Agreement included all-caps and boldface terms indicating a binding agreement to resolve disputes by arbitration. See, e.g., D. 12-5 at 6. Among the agreements included in Hayes's offer acceptance paperwork, the Arbitration Agreement was the only one to include such combination of all-caps and boldface lettering. See generally id. Thus, Hayes's argument that the Arbitration Agreement "did not signal . . . that anything out of the ordinary was occurring" is unpersuasive. See D. 18 at 14. Moreover, the Arbitration Agreement's acknowledgement, which required Hayes to confirm that he had "received and read or . . . had the opportunity to read this Agreement and the attached

8

and/or electronically linked DRP," D. 12-5 at 9, would have alerted him to the document's contractual nature. Accordingly, the undisputed facts indicate that Hayes received reasonable notice of the Arbitration Agreement's terms.

                b)        Reasonable Manifestation of Assent

"When considering whether [a] user assented to the terms of [an] online agreement, [Massachusetts courts] consider the specific actions required to manifest assent." Kauders, 486 Mass. at 573–74. "Clickwrap" agreements, which may require a user "to expressly and affirmatively manifest assent to an online agreement by clicking or checking a box that states that the user agrees to the terms and conditions," are "regularly enforced." Id. at 574 (collecting cases).

Here, Hayes provided an electronic signature indicating that he had "received and read or . . . had the opportunity to read this Agreement and the attached and/or electronically linked DRP." D. 12-5 at 9. Such signature makes "clear . . . that [Hayes] consented to the agreement[] and that he had actual notice of [its] terms," see United States ex rel. Hagerty v. Cyberonics, Inc., 146 F. Supp. 3d 337, 346 (D. Mass. 2015), and provides a stronger manifestation of assent than a mere clickwrap agreement, see Kauders, 486 Mass. at 574. Thus, Hayes reasonably manifested his assent to the Arbitration Agreement's terms.

For all these reasons, a valid arbitration agreement exists.

        2.    *Conduent is Entitled to Invoke, and Hayes is Bound by, the Arbitration Agreement as to All Defendants*

A party moving to compel arbitration must show that they are entitled to invoke the arbitration agreement and that the agreement binds the other party. Hogan, 914 F. 3d at 38. Here, the DRP states that "[a]ny Dispute involving a legally protected right, may, at the request of any Party, proceed directly to arbitration. . . . All Disputes not otherwise resolved by the Parties shall be finally and conclusively resolved through arbitration under this DRP, instead of through trial

9

before a court (including a jury trial)." D. 12-2 at 8. Such indicates that Conduent is entitled to invoke the Arbitration Agreement, which incorporates the DRP by reference, see D. 12-5 at 8, and that Hayes is bound by the same.

Hayes argues that Conduent cannot compel Hayes to submit his claims against Budka and Sarker to arbitration because they are not signatories to the Arbitration Agreement between Conduent and Hayes. D. 18 at 16. However, "an agent is entitled to the protection of her principal's arbitration clause when the claims against her are based on her conduct as an agent." See Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 11 (1st Cir. 2014). Further, "references in [the Arbitration Agreement] to Conduent include all Conduent . . . directors, officers, [and] Employees (as defined in the DRP)." D. 12-5 at 7; see D. 12-2 at 7 (defining "Employee" as "any person who is or has been in the employment of Conduent . . . whether or not employed at the time a claim is brought with respect to a Dispute"). Accordingly, Conduent may invoke the Arbitration Agreement with respect to Hayes's claims against all three Defendants and—absent waiver by Conduent—Hayes is bound by such agreement.

          3.     *The Asserted Claims Fall within the Arbitration Agreement's Scope*

In determining whether a dispute falls within an arbitration agreement's scope, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (citations and internal quotation marks omitted).

Hayes argues that the Arbitration Agreement is unenforceable regarding his Chapter 151B claims because it fails specifically to list such claims as covered by the agreement. D. 18 at 11. The Arbitration Agreement, however, broadly covers all "DISPUTES (as defined in the DRP),"

10

including legal claims Hayes "may have against Conduent including . . . claims under tort, contract, quasi-contract, equitable or statutory theories or laws including but not limited to claims of discrimination or harassment based on . . . age . . . or disability status, . . . wrongful discharge, . . . [and] claims for violation of any federal, state or other governmental law, statute, regulation or ordinance." D. 12-5 at 6 (some emphasis omitted); see D. 12-2 at 6. Considering this broad language, as well as the permissive standard for interpreting an arbitration agreement's scope, see AT&T Techs., 475 U.S. at 650, all Hayes's asserted claims fall within the scope of the Arbitration Agreement here, including those brought under Chapter 151B and federal anti-discrimination statutes (Counts I and II) and those based upon theories of tort (Count III) and contract (Count IV).

### B.     Whether Conduent Waived its Right to Arbitration

Having concluded that the Arbitration Agreement is valid and that the present claims fall within the agreement's scope, the Court still must consider whether Conduent nevertheless waived its right to arbitration, as Hayes argues it has. See D. 18 at 5–10; Combined Energies, 514 F.3d at 171. "Whether a party has waived arbitration is a question of arbitrability for the court to determine." Home Gas Corp. of Mass. v. Walter's of Hadley, Inc., 403 Mass. 772, 774–75 (1989) (quoting Martin v. Norwood, 395 Mass. 159, 162 (1985)); Jones Motor Co. v. Chauffeurs, Teamsters & Helpers Loc. Union No. 633 of N.H., 671 F.2d 38, 43 (1st Cir. 1982) (stating that "the question of whether [conduct] amount[s] to waiver calls for the expertise of a judge, not an arbitrator"). A party may waive their right to arbitration, including implicitly. See Restoration Pres. Masonry, Inc. v. Grove Europe Ltd., 325 F.3d 54, 60–61 (1st Cir. 2003) (citing Jones Motor Co., 671 F.2d at 42). Still, "[w]aiver is not to be lightly inferred, and mere delay in seeking arbitration without some resultant prejudice to a party cannot carry the day." Id. at 61 (quoting Creative Sols. Grp., 252 F.3d at 32); see Jones Motor Co., 671 F.2d at 42 (noting that Supreme

11

Court precedent "warns [courts] against being overready to find a waiver"). "The party advocating waiver has the burden of demonstrating prejudice." Joca-Roca Real Est., LLC v. Brennan, 772 F.3d 945, 948 (1st Cir. 2014).

"The essential question is whether, under the totality of the circumstances, the defaulting party acted 'inconsistently' with the arbitration right." Home Gas Corp., 403 Mass. at 775 (quoting Martin, 395 Mass. at 162) (internal quotation marks omitted). "[A] party must 'proceed with dispatch in seeking arbitration' if it does not wish to waive that right." Id. (quoting Jones Motor Co., 671 F.2d at 42) (internal quotation marks omitted). "[T]here is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts." Tyco Int'l Ltd. v. Swartz (In re Tyco Int'l Ltd. Sec. Litig.), 422 F.3d 41, 46 (1st Cir. 2005). Courts consider "whether there has been an undue delay in the assertion of arbitral rights and whether, if arbitration supplanted litigation, the other party would suffer unfair prejudice." Joca-Roca Real Est., 772 F.3d at 948. Such determination is informed by several factors, including "the length of the delay, the extent to which the party seeking to invoke arbitration has participated in the litigation, the quantum of discovery and other litigation-related activities that have already taken place, the proximity of the arbitration demand to an anticipated trial date, and the extent to which the party opposing arbitration would be prejudiced." Id.; Home Gas Corp., 403 Mass. at 775–76 (referencing same factors considered by federal courts).

Here, these factors weigh against a finding of implied waiver. Conduent promptly removed Hayes's civil complaint from state court to this Court and moved to compel arbitration less than two months after removal. See D. 2; D. 11. Moreover, the parties have not engaged in significant litigation activities, including discovery or motion practice, nor is a trial date imminent. Cf. Joca-Roca Real Est., 772 F.3d at 949 (finding waiver where plaintiff "waited more than eight months"

before pursuing arbitration, by which time "the close of discovery was hard at hand, a summary judgment motion was in the offing, and trial was less than two months away"); Home Gas Corp., 403 Mass. at 778 (finding waiver where "there was a fourteen-day hearing, a report by the master suggesting judgment for the plaintiff, and, preceding that, approximately one year of discovery before the defendant demanded arbitration").

Hayes contends that Conduent, nonetheless, acted inconsistently with its right to arbitration by delaying its assertion of that right and causing him to suffer unfair prejudice, specifically by preventing him from having his claims considered by the MCAD. D. 18 at 5–10. Hayes asserts that, had the Arbitration Agreement been provided to him previously and had Conduent made its wish to pursue arbitration known, he would not have removed his claims from the MCAD and transferred them to state court, preventing him from refiling his complaint with the MCAD. Id. at 8–10; see D. 18-1 ¶ 17; Mass. Gen. L. c. 151B, § 9 (providing that removal of an MCAD complaint to superior court "bar[s]" the complainant "from subsequently bringing a complaint on the same matter before the commission"). For support, Hayes relies upon Hernandez v. Universal Protection Service, LLC, 2021 Mass. Super. LEXIS 454, at *1 (Mass. Super. Ct. Aug. 23, 2021), a single-paragraph ruling, without legal citation, denying the defendant's motion to dismiss and compel arbitration. There, the defendant failed to produce to the plaintiff the purported arbitration agreement at several stages of the dispute, including "when the plaintiff . . . first alerted the company to the [claim]," "requested her personnel file," "filed a complaint with the MCAD," and at "any time before the plaintiff removed the complaint to Superior Court." Id. Because the plaintiff's "removal of the matter from the MCAD [was] not reversible and was at her own cost," and because the "MCAD can investigate the [claim] at the same time that arbitration is taking

13

place," Hernandez concluded that "the removal of the case from the MCAD [was] a prejudice to the plaintiff." Id.

Hernandez's analysis is not persuasive here where Conduent had no obligation to invoke the DRP in informal discussions (e.g., upon request for personnel record or settlement demand) or in administrative proceedings. The DRP expressly does not apply to administrative proceedings. D. 12-2 at 10–11 (stating that "the DRP is not intended to limit any person's right to file an administrative complaint or charge with, or to participate in the investigation of an administrative complaint or charge by, any governmental agency"). Moreover, the First Circuit has held that an employer does not waive its right to arbitration by failing to invoke such right during the pendency of an administrative proceeding. See Bossé v. N.Y. Life Ins. Co., 992 F.3d 20, 32 (1st Cir. 2021) (concluding that "[t]here [was] no inconsistency and no undue delay from [employer] asserting [a] jurisdictional defense" during administrative proceeding "rather than invoking the arbitration agreement" because the agency "was a third party not bound by the terms of the arbitration agreement"); Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 15–16 (1st Cir. 2005); Brennan v. King, 139 F.3d 258, 263–64 (1st Cir. 1998); see also Gonzalez, 321 F. Supp. 2d at 172 (holding that employer's participation in state and federal administrative proceedings regarding employee's discrimination and retaliation charges did not constitute waiver and noting "the general rule that a party must demand arbitration as early as feasible once [judicial] litigation has begun" (alteration in original) (emphasis, citation and internal quotation marks omitted)). It is difficult to see how Conduent's failure to take action that it is not required to take can amount to prejudice to Hayes. Certainly, Conduent could have invoked the DRP when Hayes filed in Middlesex Superior Court but instead it promptly removed the case to this Court and, now in the forum in which the matter

would proceed, shortly thereafter invoked the DRP.  This sequence is neither improper nor amounts to prejudice.

The First Circuit, further, has indicated that courts assessing whether a party has waived its right to arbitration should examine the party's conduct "after the complaint was filed."  See Jones Motor Co., 671 F.2d at 43 (contrasting facts amounting to waiver in that case from past instances of non-waiver in which "the conduct that allegedly amounted to a waiver or equivalent arbitration bar occurred before the court complaint was filed").  Here, considering Conduent's litigation conduct after Hayes filed his complaint, see D. 2-1, Conduent did not act inconsistently with its right to arbitration and, therefore, did not waive such right.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss and compel arbitration, D. 11.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge